**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:12-CR-9 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| JAMAEL STUBBS, | : | |
| | : | |
| Defendant | : | |

**<u>MEMORANDUM</u>**

A jury found defendant Jamael Stubbs ("Stubbs") guilty of armed bank robbery and use of a firearm in furtherance of a crime of violence in January 2013. The court sentenced Stubbs to a term of seventy months' imprisonment on the armed bank robbery count and to a consecutive statutory mandatory minimum term of eighty-four months' imprisonment on the firearm count. Stubbs now moves the court *pro se* to vacate, set aside, and correct his conviction and sentence pursuant to 28 U.S.C. § 2255. In a supplemental motion, appointed counsel moves the court for *vacatur* of Stubbs' firearm conviction in light of the United States Supreme Court's decision in <u>Johnson v. United States</u>, 576 U.S. ___, 135 S. Ct. 2551 (2015). For the reasons that follow, the court will deny both motions.

I.     **Factual Background & Procedural History**[1]

The events underlying Stubbs' convictions date to the fall of 2007, when a string of bank robberies began in south-central Pennsylvania.  Evidence introduced at trial implicated Stubbs in one of those robberies: an armed bank robbery involving codefendants Nijul Quadir Alexander ("Alexander"), Jami Mansour Shabazz ("Shabazz"), and Tristan Green ("Green").

On November 14, 2007, two men entered the Sovereign Bank at 1442 Bannister Street in York, Pennsylvania, shortly after it opened.  (Doc. 196 at 12:13-20:22, 41:3-52:8).  Both individuals wielded firearms.  (Doc. 197 at 118:4-5).  One of the individuals jumped the counter and, at gunpoint, demanded that the tellers turn over all currency in their teller drawers.  (Doc. 196 at 15:12-26, 41:12-21, 46:17-47:21).  The tellers complied, emptying their drawers and placing stacks of currency inside a backpack held open by one of the men.  (Id. at 15:12-16:9; 43:15-25).  Witnesses described the backpack as dark in color and appearing "brand new."  (Id. at 14:10-12, 43:15-21, 89:1-9).  Time-stamped surveillance images establish that the robbery began just after 9:43 a.m. and concluded at approximately 9:45 a.m.  (Id. at 21:15-24, 26:3-11, 31:12-17).  The suspects fled with $35,063.  (Doc. 164 ¶ 5).

Among the currency placed in the backpack were at least three "bait money" dye packs.  (Doc. 196 at 16:6-19:8).  "Bait money" dye packs outwardly appear to be ordinary stacks of twenty dollar bills.  (Id. at 16:18-23).  Inside, however, the stack of

---

[1] This section is based on the testimony introduced at Stubbs' trial, held January 28 to January 31, 2013, as set forth in trial transcripts.  It includes only those facts relevant to the court's analysis.

currency is hollowed out, concealing a tear gas and dye device that is triggered when the pack is removed from the teller's drawer. (Id. at 16:18-17:7). The device becomes activated when the pack is carried off the bank's premises. (Id. at 17:1-7, 84:14-85:8). After a preset amount of time expires, the dye pack explodes, emitting tear gas and a red dye. (Id. at 37:22-38:7, 84:24-85:8).

The suspects fled the bank after the tellers emptied their drawers into the backpacks. (Id. at 13:6-14). Both robbers entered a vehicle waiting outside of the bank, which quickly departed the scene. (See Doc. 197 at 117:14-24). A witness reported that the suspects' small, dark-colored car "flew past" her on the street with red smoke billowing from its windows. (Doc. 196 at 54:8-57:3). The driver and two bank robbers eventually switched into a second getaway vehicle which was waiting with a second driver several blocks away. (Id. at 230:12-231:17).

Investigating officers discovered discarded dye packs and other evidence, including currency, scattered in the vehicle's flight path. (Id. at 60:7-68:20). In addition to exploded dye packs and loose currency abandoned in the street, officers recovered backpacks containing currency, "a mask or do-rag type item," two pair of red latex gloves, two pair of winter gloves, and a loaded .22 caliber revolver. (Id. at 64:13-68:20; see also id. at 80:1-82:10). The discarded dye packs corresponded to the bank's dye pack registries. (Doc. 196 at 35:18-37:16, 88:1-11).

Detective Jeffrey Snell noted the backpacks' brand new appearance and canvassed nearby stores to determine whether the backpacks were purchased locally. (Id. at 89:1-15). His investigation revealed that the backpacks had been purchased at a Walmart store approximately three or four blocks from the bank.

3

(Id. at 89:10-90:15).  Walmart surveillance video revealed two suspects purchasing the backpacks together on November 12, 2007.  (Id. at 91:4-104:1).  Cooperating codefendants Shabazz and Alexander ultimately identified the suspects in the surveillance footage as Stubbs and Green.  (See Doc. 197 at 119:3-120:8, 198:11-25; see also Doc. 196 at 235:3-7).  Shabazz and Alexander also unequivocally identified Stubbs as the driver to and from the November 14, 2007 bank robbery.  (Doc. 196 at 227:7-229:10, 232:4-9; Doc. 197 at 115:2-118:3).

Law enforcement also located the first getaway vehicle: a black Suzuki sedan which had since been resold to an individual in Baltimore, Maryland.  (Doc.196 at 110:11-111:10).  Detective Snell traveled to Baltimore to examine the vehicle and observed hints of red staining in its carpeting.  (Id. at 111:11-112:2).  Testing of a carpet sample revealed that stains in the Suzuki matched the chemical composition of the explosive dye packs.  (Id. at 113:17-116:25).  Defendant Stubbs was the former owner of the Suzuki and owned the vehicle at the time of the November 14, 2007 bank robbery.  (Id. at 117:1-120:24).  Alexander testified that the getaway vehicle depicted in the bank's surveillance photographs was Stubbs' vehicle.  (Doc. 197 at 115:12-19).

On January 25, 2012, a federal grand jury in Harrisburg, Pennsylvania, returned a six-count indictment charging the defendant and others with various armed bank robbery and firearm offenses.  (Doc. 1).  As pertains the November 14, 2007 robbery, the indictment charged Stubbs and codefendants Alexander, Shabazz, and Green with armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d) and use of a firearm during the armed bank robbery in violation of 18

U.S.C. § 924(c)(1)(A).  (Id.)  The indictment further charged Alexander and Shabazz with armed bank robbery and firearm offenses arising from a January 18, 2012 robbery of AmeriChoice Federal Credit Union, also in York, Pennsylvania, and one felon in possession count each.  (Id.)  The court appointed Attorney Bryan Matthew McQuillan ("trial counsel") to represent Stubbs.

The grand jury returned a superseding indictment on August 29, 2012.  (Doc. 62).  The superseding indictment renumbered the November 14, 2007 robbery and firearm charges to Counts III and IV; the January 18, 2012 robbery and firearm charges to Counts IX and X; and the felon in possession charges to Counts XI and XII.  (Id.)  The superseding indictment also added new counts as follows: armed bank robbery and firearm charges against Alexander, Shabazz, and Green for a September 20, 2007 robbery of Heritage Valley Credit Union in York, Pennsylvania (Counts I and II); armed bank robbery and firearm charges against Stubbs as well as Alexander, Shabazz, and Green for a December 6, 2007 robbery of Sovereign Bank in Harrisburg, Pennsylvania (Counts V and VI); and armed bank robbery and firearm charges against Alexander and Shabazz for a December 21, 2007 robbery of Sovereign Bank in Red Lion, Pennsylvania (Counts VII and VIII).  (Id.)  On January 24, 2013, the court granted the government's motion (Doc. 156) to dismiss Counts V and VI as to Stubbs.  (Docs. 156, 160).

Trial commenced on January 28, 2013, and continued for four days. Alexander and Shabazz both pled guilty and testified for the government at trial. (See Doc. 196 at 206:18-258:18; Doc. 197 at 3:2-63:5, 88:17-201:9).  The jury convicted Stubbs of both counts concerning the November 14, 2007 bank robbery.  (Doc. 179).

With respect to Count IV, the jury found that Stubbs or a coconspirator "did knowingly carry, use, and brandish a firearm during and in relation to" the bank robbery. (Id. at 2). The probation office prepared a presentence report, calculating a Guideline sentencing range of seventy to eighty-seven months' imprisonment, to be followed by a consecutive statutory mandatory minimum term of eighty-four months based on the jury's "brandishing" finding and 18 U.S.C. § 924(c). On May 29, 2013, the court sentenced Stubbs to 154 months' imprisonment, consisting of seventy months on Count III and a consecutive mandatory minimum term of eighty-four months on Count IV. (Doc. 229).

Stubbs appealed his judgments of conviction and sentence to the United States Court of Appeals for the Third Circuit on June 3, 2013. (Doc. 230). Stubbs challenged the sufficiency of the evidence against him on both aiding and abetting and Pinkerton vicarious liability theories. See United States v. Stubbs, 578 F. App'x 114, 117 (3d Cir. 2014). Stubbs also argued that the government's failure to charge the "brandishing" element in the superseding indictment constituted reversible error in light of the Supreme Court's intervening decision in Alleyne v. United States, 570 U.S. __, 133 S. Ct. 2151 (2013), which was argued two weeks before trial commenced and decided less than one month after Stubbs' sentencing. See Stubbs, 578 F. App'x at 117.

The Third Circuit rejected both arguments. The court first determined that "ample" record evidence supports a finding that Stubbs was intimately involved in the planning and execution of the robbery. Id. at 117-18. Concerning Alleyne, the court held that omission of a brandishing element from the indictment is error in

light of the Supreme Court's decision, but that Stubbs suffered no prejudice given

the "overwhelming and uncontroverted evidence of brandishing."  Id. at 118-21

(internal quotation marks omitted) (quoting United States v. Cotton, 535 U.S. 625,

633-34 (2002)).  Stubbs did not petition the Supreme Court for *certiorari*.  (Doc. 299

at 2).

Stubbs filed the instant *pro se* § 2255 motion (Doc. 299) and supporting brief

(Doc. 300) on August 28, 2015.  Therein, Stubbs raises several Sixth Amendment

challenges to his trial counsel's performance.  (See id. at 2).  On April 7, 2016, the

Federal Public Defender's Office, through Attorney Melinda C. Ghilardi, moved for

leave to file a supplemental § 2255 motion challenging Stubbs' § 924(c) conviction

and sentence based on the Supreme Court's decision in Johnson.  (Doc. 309).  The

court granted Attorney Ghilardi's request and issued a supplemental briefing

schedule.  (Doc. 314).  Both of Stubbs' motions are fully briefed and ripe for

disposition.

## II.   Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to

vacate, set aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  Courts may

afford relief under § 2255 on a number of grounds including, *inter alia*, "that the

sentence was imposed in violation of the Constitution or the laws of the United

States."  28 U.S.C. § 2255(a); see also R. GOVERNING § 2255 CASES 1(a).  The statute

provides that, as a remedy for an unlawfully-imposed sentence, "the court shall

vacate and set the judgment aside and shall discharge the prisoner or resentence

him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

## III.   Discussion

Stubbs' motions challenge his conviction and sentence on five separate grounds. The court will address each substantive claim separately.

### A.   Ineffective Assistance of Counsel

Stubbs' *pro se* arguments arise under the Sixth Amendment's guarantee of effective counsel. A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate, first, that trial counsel's representation fell below an objective level of reasonableness based on prevailing professional norms and, second, that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward

counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."  Id. at 711 (citing Strickland, 466 U.S. at 689-90).  Counsel will not be deemed ineffective for failing to raise a meritless claim.  See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

Stubbs asserts four ineffective assistance claims, alleging: *first*, that trial counsel failed to properly communicate or consult with him, resulting in failure to discover putative alibi witnesses; *second*, that trial counsel failed to assert Brady violations or challenge the sufficiency of the indictment; *third*, that trial counsel failed to preserve a prospective Alleyne objection, triggering a heightened standard of review on direct appeal; and *fourth*, that the cumulative effect of trial counsel's purported errors constitutes ineffective assistance *in toto*.  The court will address Stubbs' arguments *seriatim*.

### 1.    *Ground 1: Failure to Consult or Communicate*

Stubbs contends that trial counsel failed to explore a potential alibi defense. We consider a number of factors in determining whether counsel's alleged failure to investigate is constitutionally deficient, to wit: (1) the nature of the evidence cited by the movant; (2) the amount of knowledge the attorney has concerning the evidence; (3) the client's role in any decision not to investigate the evidence; (4) the difficulty of performing any attendant investigation; and (5) the nature and quality of trial counsel's strategy.  McGahee v. United States, 570 F. Supp. 2d 723, 732-35 (E.D. Pa. 2008), aff'd, 370 F. App'x 274 (3d Cir. 2010).  An alibi is "among the most compelling defenses."  Id. (citing Johnson v. Oklahoma, 484 U.S. 878, 881 (1987)).  Accordingly, failure by trial counsel to investigate a known and viable alibi defense raises Sixth Amendment concerns.  See id.

Stubbs avers that he "was at his place of residence caring for his six month old infant daughter" during the November 2007 robbery, while the child's mother, Bucheline Fleurimond, was at work.  (Doc. 300 at 6).  He suggests that Fleurimond's work attendance records would have confirmed that she was in fact at work at the time of the robbery.  (See id.)  Stubbs further suggests that several witnesses—his landlord, mother, and stepfather, and his child's maternal grandmother—would have testified that Stubbs "was indeed caring for his infant daughter on or around the day of the robbery" as this was his "routine."  (Id. at 6-7).  He attaches to the instant motion his mother's affidavit which declares: "I would have testified on behalf of the movant . . . had I been called to do so" and "[m]y testimony would have been consistent with, and therefore verified [Stubbs'] version of the events that took

place in November of 2007." (Doc. 299-1).  Stubbs asserts that trial counsel failed to effectively consult or communicate with him, preventing counsel from discovering this evidence.  (See Doc. 300 at 6-7).  However, Stubbs does not indicate that he ever informed counsel of his purported alibi.  (See id. at 4, 6-7).

Trial counsel's performance was neither deficient nor prejudicial.  Stubbs avers that he met with counsel three times in advance of trial.  (Id. at 3).  Stubbs ostensibly knew of the alleged exculpatory witnesses before and at the time of trial, and yet his motion is devoid of any allegation that he identified the witnesses to trial counsel or expressed a desire to pursue an alibi defense.  (Id.)  Tellingly, Stubbs did not mention a putative alibi until the filing of his § 2255 motion.  The court cannot adjudge counsel's performance to be deficient based on evidence known to but not disclosed by his client.

Moreover, the "alibi" evidence proffered by Stubbs does not rule out his participation in the robbery.  Assuming the truth of Stubbs' *allegata*, his evidence establishes only that: (1) the mother of Stubbs' child was at work at the time of the robbery and (2) "*on or around* the day of the robbery," Stubbs was likely caring for his daughter.  (See id. at 6-7 (emphasis added)).  Stubbs does not identify a single witness with personal and particular knowledge that he was in fact in his home at 9:43 a.m. on November 14, 2007.  (See id.)  Against the overwhelming evidence of Stubbs' guilt, no juror could have found that this ambiguous evidence established Stubbs' innocence.  The court rejects Stubbs' first ground for relief.

### 2. Ground 2: Failure to Assert a _Brady_ Violation or Challenge the Sufficiency of the Indictment

Stubbs second ground raises two separate but related arguments. First, he contends that the government's declination to pursue Counts V and VI against him oppugns the sufficiency and validity of evidence presented to the grand jury on all other counts. (See Doc. 300 at 10). Second, he avers that trial counsel's failure to challenge the indictment on this basis precluded the defense from testing the truth, sufficiency, and legality of evidence submitted to the grand jury, in particular the allegedly "false evidence" provided by codefendant Alexander. (See id.) In other words, Stubbs suggests that dismissal of Counts V and VI establishes that "there was no probable cause or evidence" supporting those charges, tainting the balance of the indictment. (Id. at 10-11).

Stubbs' argument misapprehends the quantum of proof required at the respective stages of a criminal prosecution. Before a grand jury, the government need only establish probable cause to believe the defendant committed a crime. See Kaley v. United States, 571 U.S. __, 134 S. Ct. 1090, 1103 (2014) (quoting Florida v. Harris, 568 U.S. __, 133 S. Ct. 1050, 1055 (2013)). This "is not a high bar"; indeed, the probable cause standard serves "only a gateway function." Id. At trial, _per contra_, the government carries a heavier burden of proving guilt to the petit jury beyond a reasonable doubt. See Cotton, 535 U.S. at 634.

The government's determination that it did not have sufficient evidence to _convict_ Stubbs of the December 6, 2007 robbery does not establish that the grand jury did not have sufficient evidence to _charge_ Stubbs with that offense. Nor does

the government's election to dismiss Counts V and VI taint the balance of the grand jury's superseding indictment, *viz.*, Counts III and IV pertaining to the November 14, 2007 robbery. Trial counsel was not ineffective for declining to challenge the sufficiency of the indictment.

Stubbs also avers that trial counsel failed to raise what Stubbs styles as a "Brady" challenge. (Doc. 300 at 9-12). Stubbs' characterization of his claim as arising under Brady v. Maryland, 373 U.S. 83 (1963), is mistaken. Brady held that prosecutors who fail to disclose material and exculpatory evidence to the defense violate the defendant's right to due process. Id. at 87. Stubbs identifies no such exculpatory evidence. Stubbs instead speculates that Alexander provided false or inconsistent testimony before the grand jury, plausibly triggering a government disclosure obligation pursuant to Giglio v. United States, 405 U.S. 150 (1972). This speculation is unfounded: Alexander did not testify before the grand jury, and thus false or inconsistent grand jury testimony cannot exist. The court rejects Stubbs' self-styled "Brady" claim.

**3.     *Ground 3: Failure to Preserve an Alleyne Objection***

Stubbs contends that trial counsel erred in failing to preserve a prospective Alleyne objection to the superseding indictment.[2] (Doc. 300 at 14-17). Specifically,

---

[2] Alleyne is not retroactively applicable to the typical case on collateral review. United States v. Reyes, 755 F.3d 210, 212 (3d Cir. 2014). However, Stubbs' conviction was not yet final at the time Alleyne was decided. The Supreme Court has held that retroactivity analyses necessarily differ for convictions which "are not final at the time the new decision is issued." Griffith v. Kentucky, 479 U.S. 314, 321-22 (1987). Accordingly, the retroactivity bar applied to Alleyne claims does not foreclose Stubbs' argument *sub judice*. See United States v. LaPrade, No. 15-1700, 2016 WL 7338416, at *3 n.5, __ F. App'x __ (3d Cir. Dec. 19 2016).

he asserts that his seven-year mandatory minimum sentence for "brandishing" a firearm under 18 U.S.C. § 924(c) is unlawful in light of the government's failure to charge that element in the superseding indictment.  (Id.)  As a threshold matter, the court observes that trial counsel's purported failure to "anticipate changes in the law" does not constitute ineffective assistance.  United States v. Stewart, 151 F. Supp. 2d 572, 577 (E.D. Pa. 2001) (quoting Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)) (citing Sistrunk v. Vaughn, 96 F.3d 666, 672 (3d Cir. 1996)).  Hence, Stubbs cannot satisfy the first Strickland prong.

Stubbs' claim also fails for lack of prejudice.  In an extension of Apprendi v. United States, 530 U.S. 466 (2000), the Supreme Court held in Alleyne that any fact which increases the mandatory minimum sentence for a crime is an "element" of that crime that must be submitted to and found by a jury.  Alleyne, 133 S. Ct. at 2162-63.  On direct appeal in this case, the Third Circuit held that Alleyne—like Apprendi—requires that an element increasing a defendant's mandatory minimum sentencing exposure be both charged in the indictment and found by the jury.  Stubbs, 578 F. App'x at 120 (citing Apprendi, 530 U.S. at 476).  The Third Circuit thus held that omission of the "brandishing" element of the § 924(c) offense from the superseding indictment was error under Alleyne.  Id.  Nonetheless, the court found that Stubbs' enhanced sentence did not constitute reversible plain error because the record contained "overwhelming and uncontroverted" evidence of brandishing by his codefendant.  Id. at 121 (quoting Cotton, 535 U.S. at 632-33).

Stubbs presently argues that the Third Circuit's decision would have been different had trial counsel preserved an Alleyne objection, invoking a less-stringent

14

harmless error standard of review.  (See Doc. 300 at 14-17).  Stubbs cites to United States v. Lewis ("Lewis II"), 802 F.3d 449 (3d Cir. 2015) (en banc) as support for his position.  In Lewis II, the trial court imposed an enhanced sentence for brandishing a firearm when that element was neither charged in the indictment nor found by the jury.  Id. at 452.  The defendant timely objected, preserving harmless error review.  See id. at 452, 454-55.  A three-judge panel found the Alleyne error to be harmless and affirmed the defendant's sentence.  See United States v. Lewis ("Lewis I"), 766 F.3d 255, 270-71 (3d Cir. 2014).

On rehearing en banc, the court reversed.  Lewis II, 802 F.3d at 455-58.  A majority of the court rejected the government's assertion that an "overwhelming and uncontroverted evidence" standard governs both plain error and harmless error cases.  Id. at 456-57.  The court held that, for a properly preserved Alleyne sentencing objection, the harmless error standard inquires only whether the error "contributed" to the defendant's sentence.  Id. at 458.  Because no jury had found that Lewis brandished a firearm, the court answered its inquiry in the affirmative and remanded Lewis's case for resentencing without the enhancement.  Id.

Stubbs urges the court to follow Lewis II's lead.  But Stubbs ignores a fundamental distinction between the two cases: herein, the court instructed the jury on the "brandishing" element and the jury found beyond a reasonable doubt that "Stubbs or a coconspirator did knowingly carry, use, and brandish a firearm" during the November 14, 2007 bank robbery.  (Doc. 179 at 2 (emphasis added)).  The principal concern of Alleyne is that a judge may not decide facts that enhance a

mandatory minimum sentence—rather, "juries must do so."  Lewis II, 802 F.3d at 456.  Here, the jury did so.  (Doc. 179 at 2).

In his reply brief, Stubbs endeavors to recast his Alleyne claim as one for "constructive amendment" of the superseding indictment.  Whether an Alleyne (or Apprendi) claim implicates constructive amendment concerns is unresolved in the Third Circuit.  In Lewis I, the panel majority held that sentencing a defendant to an enhanced minimum term based on aggravating factors not charged in the indictment does not constitute constructive amendment warranting reversal *per se*.  See Lewis I, 766 F.3d at 269-70.  Judge Rendell dissented, criticizing the majority's harmless error analysis as well as its constructive amendment holding.  Id. at 275 n.3 (Rendell, J., dissenting).  The court's *en banc* decision in Lewis II adopted Judge Rendell's harmless error analysis, but left the ancillary constructive amendment inquiry for another case.  See Lewis II, 802 F.3d at 454-58.

Substantive and procedural defects prevent this court from addressing the merits of Stubbs' additional claim *sub judice*.  It is unclear whether Stubbs ascribes the purported constructive amendment error to the court, trial counsel, or both.  To the extent Stubbs styles his claim as one for ineffective assistance, we reiterate that counsel is neither unreasonable nor deficient for failing to anticipate a change in the law.  See Stewart, 151 F. Supp. 2d at 577 (quoting Forte, 865 F.2d at 62) (citing Sistrunk, 96 F.3d at 671-72).  And to the extent Stubbs claims error by the court, his argument is procedurally defaulted for failure to raise it on direct appeal.  See United States v. Bousley, 523 U.S. 614, 622 (1998).  A defendant may surmount a default only by showing cause as well as resulting prejudice should the default be

given preclusive effect.  See United States v. Doe, 810 F.3d 132, 153 (3d Cir. 2015).

Stubbs alleges neither.  As a result, his restyled Alleyne claim is not cognizable on

collateral review.

### 4.   *Ground 4: Cumulative Effect*

Stubbs lastly argues that the "cumulative effect" of trial counsel's errors

prejudiced his defense.  He recites each of the above-rejected claims in addition to

the following *allegata*: (1) that trial counsel failed to strike a juror whose spouse was

a former bank manager and that juror became the jury foreperson; (2) that trial

counsel "agreed to and advised [Stubbs] to sign off on" a stipulation of the parties

(Doc. 164) concerning certain technical matters; and (3) that trial counsel "failed to

ask a key question [Stubbs] requested counsel to ask," which question counsel

ultimately "was not permitted to ask by the Court."  (Doc. 300 at 18).  These

claims—both separately and *in toto*—fall well short of the Strickland standard.

Stubbs' first argument neglects that the court pressed the juror in question

about his ability to remain impartial.  During *voir dire*, the juror disclosed that his

"wife was a former banker."  (Doc. 195 at 21:9-10).  The following discussion ensued:

> THE COURT:  All right.  Recognizing that this case
> involves allegations of armed bank robbery and given the
> fact that your wife's prior occupation was as a banker, is
> there anything about the nature of these charges and
> your wife's employment that would cause you to be
> unable to render a fair and impartial decision in this case
> based solely on the evidence presented in the courtroom?
>
> PROSPECTIVE JUROR:  I don't believe so.
>
> THE COURT:  All right.  I actually have to have a
> commitment.  "I don't believe so" isn't quite there, but I

17

think you meant to say you could.  But are you certain
that you could render a fair and –

PROSPECTIVE JUROR: Yes, I could.

(Id. at 21:13-22:3).  The juror was unequivocal in his response to the court.  Stubbs

offers no basis to impugn the juror's credibility or the integrity of the jury verdict.

See United States v. Diehl-Armstrong, No. 07-CR-26, 2015 WL 9461628, at *6 n.6

(W.D. Pa. Dec. 28, 2015); Tolentino v. United States, No. 13-4168, 2014 WL 3844807,

at *4 (D.N.J. July 31, 2014).  Trial counsel is not constitutionally deficient for failing

to strike this juror.

Stubbs' remaining claims require little discussion.  Stubbs apparently takes

issue with the parties' joint stipulation concerning the victim financial institutions'

federally insured status, the amounts of money stolen from those institutions, and

the admissibility of certain documentary exhibits without the necessity of calling

their custodians or authors to testify.  (See Doc. 300 at 18; see also Doc. 164).  Other

than identifying the fact of the stipulation, Stubbs fails to elucidate why counsel was

ineffective for sanctioning the stipulation, or what prejudice flowed from signing it.

(See Doc. 300 at 18).  Stubbs also alleges vaguely that trial counsel "failed to ask a

key question," before immediately observing that the court barred the proposed

question.  (Id.)  Obviously, counsel cannot be ineffective for failing to ask a question

disallowed by the court.  Stubbs' cumulative effect argument is futile given the

court's conclusion that counsel was not ineffective.

**B.**     **Johnson v. United States**

In a supplemental motion by appointed counsel, Stubbs asks the court to vacate and correct his sentence pursuant to 28 U.S.C. § 2255 in light of the Supreme Court's decision in Johnson v. United States, 576 U.S. __, 135 S. Ct. 2551 (2015).  In Johnson, the Court invalidated the "residual clause" of the Armed Career Criminal Act ("ACCA"), which provides an enhanced sentence for defendants convicted under 18 U.S.C. § 922(g) who have three prior convictions for a "violent felony" or a "serious drug offense."  18 U.S.C. § 924(e)(1).  The ACCA defines three categories of predicate violent felonies: (1) crimes having "as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) crimes of burglary, arson, or extortion, or which involve use of explosives; and (3) crimes which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."  Id. § 924(e)(2)(B)(i)-(ii).  Courts refer to the first clause as the "force clause," the second as the "enumerated offenses clause," and the third as the "residual clause."  Johnson struck down the residual clause as unconstitutionally vague.  Johnson, 135 S. Ct. at 2557.  The Supreme Court has held that Johnson is retroactively applicable to ACCA cases on collateral review.  Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

Stubbs seeks to extend Johnson to his conviction and enhanced sentence under 18 U.S.C. § 924(c)(1)(A).  Section 924(c)(1)(A) subjects a criminal defendant who uses, carries, or possesses a firearm in furtherance of a "crime of violence or drug trafficking crime" to a mandatory minimum term of imprisonment consecutive to any sentence imposed for the underlying crime.  The statute establishes a tiered

series of mandatory minimums: a defendant who "uses or carries" or "possesses" a firearm in furtherance of a qualifying crime shall be sentenced to a term of not less than five years; the sentence increases to seven years if a firearm is "brandished" and ten years if a firearm is "discharged." Id. § 924(c)(1)(A)(i)-(iii). Section 924(c)(3) defines "crime of violence" as a felony which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3)(A)-(B). Adopting ACCA vernacular, courts refer to the first clause as the "force clause" and the second clause as the "residual clause."

Stubbs asserts that Johnson's *vacatur* of the ACCA's residual clause applies with equal force to nullify the residual clause of § 924(c). His argument raises three distinct inquiries: whether armed bank robbery qualifies as a "crime of violence" under the force clause of § 924(c) rather than the residual clause; whether Johnson applies to § 924(c); and whether Stubbs' petition is timely. The first inquiry is outcome determinative; hence, the court declines to address Stubbs' constitutional arguments concerning the scope of Johnson and its retroactivity.

The substantive offense undergirding Stubbs' § 924(c) conviction is armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). (Docs. 62, 179). Section 2113(a) penalizes those who "by force and violence, or by intimidation" obtain money from a banking institution. 18 U.S.C. § 2113(a). The statute contemplates enhanced penalties for a defendant who, in furtherance of a bank robbery, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous

weapon or device." Id. § 2113(d).  Stubbs maintains that this offense is not a "crime of violence" contemplated by § 924(c).

Stubbs' argument is without merit.  This court and others have consistently held that armed bank robbery constitutes a "crime of violence" within the meaning of § 924(c)'s force clause.  See United States v. Williams, No. 16-CR-283, 2016 WL 7104297, at *3 & n.1 (M.D. Pa. Dec. 6, 2016) (Conner, C.J.) (collecting cases).  As noted in Williams, this court agrees with the compelling *ratio decidendi* of the established consensus.  Id.  Stubbs offers no reason to depart from our prior holding or uniform authority on this point.  The court concludes that Stubbs' armed bank robbery conviction under 18 U.S.C. § 2113(a) and (d) constitutes a predicate "crime of violence" under the force clause of § 924(c).  Accordingly, Johnson does not impact Stubbs' § 924(c) conviction.

## IV.  **Conclusion**

The court will deny Stubbs' motions (Docs. 299, 315) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      February 10, 2017