## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-CR-9** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **JAMAEL STUBBS (4),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Jamael Stubbs, through appointed counsel, moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Docs. 402, 409). Stubbs asks the court to reduce his sentence to time served based on his medical condition and his concern that the COVID-19 virus[1] may reach the Lewisburg United States Penitentiary ("USP Lewisburg") where he is currently incarcerated. The government opposes compassionate release. For the reasons that follow, we will deny Stubbs' motion.

## I.    Factual Background & Procedural History

In January 2012, a grand jury returned a six-count indictment against Stubbs and three others. The indictment charged Stubbs with one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and one count of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 1 at 1-2). A

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

12-count superseding indictment returned in August 2012 charged Stubbs with an additional count each under Section 2113(a) and (d) and Section 924(c)(1)(A).  (See Doc. 62 at 3-6).  The government dismissed two of these four counts, and Stubbs ultimately proceeded to trial on one count of armed bank robbery under Section 2113(a) and (d), and one count of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).  (See Doc. 156).

In January 2013, a jury found Stubbs guilty on both counts.  (See Doc. 179). This court sentenced Stubbs to 154 months' imprisonment, consisting of 70 months on the robbery count and a consecutive mandatory minimum term of 84 months on the firearm count.  (See Doc. 229 at 2).  The court imposed a three-year term of supervised released on each count to run concurrently, a $1,000 fine, nominal restitution, and a special assessment of $200.  (See id.)  The Third Circuit Court of Appeals affirmed Stubbs' conviction and sentence on direct appeal.  See United States v. Stubbs, 578 F. App'x 114 (3d Cir. 2014) (nonprecedential).

Stubbs filed a motion under 28 U.S.C. § 2255 in August 2015, (Doc. 299), which we denied, (Docs. 342, 343).  The Third Circuit affirmed our denial of Stubbs' Section 2255 motion.  See United States v. Stubbs, 757 F. App'x 159 (3d Cir. 2018) (nonprecedential).  Stubbs then filed a "Rule 15" motion or, alternatively, a "Rule 60(b)" motion in this court, asking us to find that his sentence is unconstitutional. (See Doc. 351).  We determined that the motion was a "disguised successive petition" that must be authorized by the Third Circuit and denied the motion.  See United States v. Stubbs, No. 1:12-CR-9, 2019 WL 5212593, at *2 (M.D. Pa. Oct. 16, 2019) (Conner, C.J.).  Stubbs is currently housed at USP Lewisburg with a projected

release date of September 15, 2024.  See *Find an Inmate*, FEDERAL BUREAU OF

PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "70419-

067") (last visited July 10, 2020).

Stubbs asserts that he submitted a request for compassionate release to the

warden at USP Lewisburg on May 9, 2020.  (See Doc. 402 at 1).  On May 15, 2020,

Stubbs filed a *pro se* motion for compassionate release with this court under 18

U.S.C. § 3582(c)(1)(A)(i).  (See Doc. 402).  We appointed the Federal Public Defender

to file any appropriate motion or briefing on his behalf, and appointed counsel filed

a supporting brief on June 26, 2020.  (See Docs. 403, 409).  The warden purportedly

denied Stubbs' request during the pendency of the instant motion.  (See Doc. 409 at

2; Doc. 414 at 12; Doc. 415 at 1 n.1).  We implemented an expedited briefing

schedule, (see Doc. 410), and the motion is ripe for review, (see Docs. 409, 414, 415).

## II.   **Discussion**

Stubbs asks the court to reduce his sentence to time served pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub.

L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing

court to reduce a term of imprisonment if the court finds, after consideration of the

Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can

move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A).

But before a defendant can move the court directly, he must either "fully exhaust[]

all administrative rights to appeal a failure of the [BOP] to bring a motion on [his]

behalf" or wait for 30 days to lapse from the warden's receipt of a request that the

BOP file such a motion.  <u>Id.</u>  The parties agree that the warden denied Stubbs'

request after Stubbs' filed his *pro se* motion in this court, but the government does

not argue that Stubbs has failed to satisfy the minimum statutory exhaustion

requirements.  (<u>See</u> Doc. 414 at 12; Doc. 415 at 1 n.1).  Whether or not Stubbs has

exhausted his administrative remedies, we conclude that he is not entitled to

compassionate release.[2]

---

[2] Both parties largely gloss over the issue of administrative exhaustion, (<u>see</u> Doc. 404 at 3-4; Doc. 409 at 2; Doc. 414 at 11; Doc. 415 at 1 & n.1), and we have no evidentiary indication that Stubbs has fully exhausted administrative remedies as contemplated by Section 3582(c)(1)(A), <u>see</u> 18 U.S.C. § 3582(c)(1)(A); <u>see also</u> <u>United States v. Raia</u>, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); <u>United States v. Petrossi</u>, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); <u>Petrossi</u>, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020).  In fact, in his *pro se* motion, Stubbs asks us to judicially excuse the exhaustion requirement. (<u>See</u> Doc. 402 at 3-4).  As this court recently explained, judges cannot waive Section 3582(c)(1)(A)'s statutory exhaustion requirement.  <u>See</u> <u>Petrossi</u>, 2020 WL 1865758, at *3-4.  Setting aside judicial waiver, courts are divided on whether Section 3582's exhaustion provision is a jurisdictional requirement that cannot be waived or excused by the government.  <u>Compare</u> <u>United States v. Alam</u>, 960 F.3d 831, 833-34 (6th Cir. 2020); <u>United States v. Johnson</u>, No. 15-CR-125, ___ F. Supp. 3d ___, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020); <u>United States v. Nazer</u>, No. 18-CR-00783-2, ___ F. Supp. 3d ___, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020); <u>United States v. Haney</u>, No. 19-CR-541, ___ F. Supp. 3d ___, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020), <u>with</u> <u>United States v. Baye</u>, No. 3:12-CR-00115-RCJ, ___ F. Supp. 3d ___, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020); <u>United States v. Johnson</u>, No. CR RDB-14-0441, ___ F. Supp. 3d ___, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020).  Although not raised by the parties, the court has a continuing obligation to consider questions of subject-matter jurisdiction *sua sponte*.  <u>See</u> <u>Fort Bend Cty. v. Davis</u>, 587 U.S. ___, 139 S. Ct. 1843, 1849 (2019) (citing <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 141 (2012)).  Nonetheless, we need not resolve the jurisdictional question in this case.  Assuming jurisdiction *arguendo*, Stubbs has not established that a reduction in sentence is appropriate under Section 3582(c)(1)(A)(i).

### A.       Extraordinary and Compelling Reasons

Stubbs contends that his medical condition and resulting vulnerability to serious complications from COVID-19 establish extraordinary and compelling reasons to grant compassionate release.  Stubbs is 36 years old and is a "chronic care" patient that suffers from hypertension, for which he takes blood pressure medication.  (See generally Doc. 412).  He also reports—without documentary support—that he was born with bronchitis.  (See Doc. 404 at 4; Doc. 409 at 1).  Stubbs asserts that his medical condition places him "at high risk for severe illness or death from COVID-19," that this risk is amplified in the prison setting, and that immediate release is the only way to guard against this risk and protect his health. (See Doc. 409 at 1-2, 7).  Stubbs argues that the risk posed to his health is heightened due to the fact that one staff member at USP Lewisburg has tested positive for the virus.  (See id. at 4).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3]  See U.S.S.G. § 1B1.13 cmt. n.1

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

(U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover."  Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment.  Id. at cmt. n.1(B).  The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above.  Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release.  Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Stubbs are those concerning prisoners with a "debilitated medical condition."  See FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (Jan. 17, 2019).  The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover."  Id.  Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry

on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria. Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions. In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).[4] Over the past few months, district courts in both the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release. See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); United States v. Anderson, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context). In

---

[4] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile. See Raia, 954 F.3d at 596-97. Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably dicta. We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

other words, something more than a generalized concern regarding COVID-19 is
required.

Stubbs contends that his medical condition justifies compassionate release.
The Centers for Disease Control and Prevention do identify individuals with
hypertension or high blood pressure as those who "might be at an increased risk for
severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): People with
Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-
higher-risk.html (last reviewed July 15, 2020).  But Raia suggests that this unique
susceptibility, absent any likelihood of direct exposure to the virus, is not enough.
Francis Raia was 68 years old, and, like Stubbs, had preexisting medical conditions.
Raia, 954 F.3d at 596.  The Third Circuit acknowledged "the risks that COVID-19
poses in the federal prison system, *particularly for inmates like Raia*," but
nonetheless concluded that the "possibility" of the virus reaching his institution
could not justify compassionate release.  Id. at 597 (emphasis added).

Stubbs' counsel suggests that things have changed.  Counsel asserts that
there has been an "explosion of COVID-19 cases in prisons across the country" and
that 88 prisoners have died after contracting the disease in BOP custody.  (Doc. 409
at 4-5).  Tragically, counsel is correct—BOP statistics establish that several federal
prisons have experienced outbreaks, and 95 prisoner deaths have been recorded to
date.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/
coronavirus/ (select "Full breakdown and additional details") (last updated July 14,
2020, 3:00 p.m.).  But nationwide figures are not representative of circumstances

at individual prisons.  As of this writing, the BOP reports that no prisoner or staff member at USP Lewisburg has tested positive for the virus—only one staff member previously tested positive, but they are now listed as "recovered."[5]  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated July 14, 2020, 3:00 p.m.).  And this is not for want of testing: 64 of 1,079 prisoners at USP Lewisburg have been tested for the virus.  See id. (select "Learn more about the data and view individual facility stats"); *Population Statistics*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/about/population_statistics.jsp (last visited July 15, 2020).  We thus have no objective basis to find that Stubbs is at imminent risk of being exposed to or contracting the COVID-19 virus.

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks.  It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services.  See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 9, 2020).  Prisoner movement between facilities has been "suspended with limited exceptions."  Id.  Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  See id.  The BOP has also reduced

---

[5] According to the government, the sole staff member that tested positive for the virus did so after returning to Pennsylvania from a detail assignment in New York and never entered USP Lewisburg.  (See Doc. 414 at 12).

its overall prison population by ramping up exercise of its authority under 18 U.S.C.

§ 3624(c)(2)—recently expanded by the Coronavirus Aid, Relief, and Economic

Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—

to release certain vulnerable prisoners to home confinement.  See *COVID-19*

*Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.  The BOP

reports that it has substantially increased use of home confinement, releasing 6,877

prisoners since the end of March 2020.  Id. (last visited July 15, 2020).

There is also no reason to believe that the BOP cannot adequately treat

Stubbs' medical conditions.  Stubbs' medical records reflect that prison medical

staff are diligent about examining Stubbs and ensuring that his blood pressure and

hypertension are properly managed by appropriate medication.  (See generally Doc.

412).  In fact, Stubbs' medical records repeatedly reiterate that Stubbs'

hypertension is under control and that he is generally in good health—he has

reported as "feeling well," in "no pain today," and he "denies any chest pains," for

example.  (See id. at 13).  Moreover, the prison has shown its ability to adequately

monitor Stubbs' other medical conditions unrelated to his hypertension, including,

for example, a cyst he developed next to his left eyebrow.  (See id. at 1, 11, 13, 18).

There is simply no support for the intimation that the BOP is not equipped to treat

Stubbs.

The information available to the court establishes that the BOP is

appropriately managing Stubbs' medical conditions, that there presently is not a

strong likelihood that he will be exposed to the COVID-19 virus at USP Lewisburg,

and that the BOP is working hard to prevent such exposure from happening.  On

these facts, we cannot conclude that the possibility that the COVID-19 virus *might* reach USP Lewisburg—whether on its own or in combination with Stubbs' heightened susceptibility to severe illness from COVID-19—is an "extraordinary and compelling" reason for release.

### B.    Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors.[6]  See 18 U.S.C. § 3582(c)(1)(A).  Accounting for good time, Stubbs still has over 50 months remaining on his 154-month sentence.  His crime of conviction was serious.  He has a significant and lengthy criminal record, and a history of violating parole.  (See PSR ¶¶ 26-29, 31).  We commend Stubbs' rehabilitative efforts while in prison, his participation in mentoring and vocational programs, and his ability to arrange for post-incarceration employment.  (See Doc. 409-2; Doc. 409-3; Doc. 409-4; Doc. 402 at 7).  But, on balance, the Section 3553(a) factors support leaving Stubbs' existing sentence intact.

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

### III.   <u>Conclusion</u>

We are not unsympathetic to Stubbs' concern—or to any prisoner's concern—that the COVID-19 virus may reach the institution where he is housed. But that concern does not alone supply an "extraordinary and compelling" reason for a sentence reduction that would have the effect of reducing Stubbs' prison term by more than four years.  Nor does it counterbalance the aggravating Section 3553(a) factors identified above.

For all of these reasons, the court will deny Stubbs' motion for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  Mindful of the rapidly evolving nature of the COVID-19 pandemic and the potential for hotspot outbreaks, our denial will be without prejudice to Stubbs' ability to refile the motion if, for example, the COVID-19 virus is detected at USP Lewisburg.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 15, 2020